# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LI GEAR, INC., <br><br> Plaintiff, <br><br> v. <br><br> KERR MACHINE CO., <br><br> Defendant. | No. 16 C 4657 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Li Gear, Inc., filed a single-count complaint for breach of contract against Defendant Kerr Machine Co. Li Gear seeks $630,000 in damages for goods ordered by Kerr for which it has failed and refused to pay. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

On August 30, 2016, Defendant moved for Summary Judgment based on lack of personal jurisdiction. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

Li Gear is an Illinois corporation with its principal place of business in Illinois. (Compl. ¶ 1). It manufactures and sells gears and gearboxes. (*Id.*). Kerr is an Oklahoma corporation with its principal place of business in Oklahoma. (Dkt. 19, Ex. 1 (Nowell Decl.) ¶¶ 3, 6). Kerr manufactures, sells, and services various pumps and pump parts. (*Id.* ¶ 4). Li Gear's personnel have reached out to Kerr in Oklahoma

and in other states to solicit sales of Li Gear's products to Kerr. (*Id.* ¶ 16). Kerr's personnel have not been to Li Gear's place of business in Illinois. (*Id.* ¶ 14).

The parties first became aware of each other during oil-and-gas industry trade shows attended by both companies, typically in Texas, from 2012 through 2014. (Dkt. 32-1 (Li Decl.) ¶ 6). On January 10, 2014, Mike May, Kerr's Vice President of Engineering, sent an email to Li Gear, requesting that Li Gear submit a quote for the sale of industrial gears: "Our primary Gear supplier has let us down so this would be an excellent opportunity [*sic*] to help us make quick Delivery if your Price is good. Attached are the drawing PDF files [for] your records." (*Id.* ¶ 7 & Ex. A). On January 13, Kerr sent a follow-up email to Li Gear asking, "What can you do to help us on this? Please contact me or Jake at your earliest convenience." (*Id.* ¶¶ 7–10 & Ex. A). Over the next few weeks, the vice presidents of both companies participated in phone conferences discussing the gears to be built and the price ranges for those products, culminating in a February 7 email from Li Gear to Kerr, which included a sales quote for the requested gears. (*Id.* ¶¶ 11–13 & Ex. A). The sales quote also states:

> All sales and sales quotes, including this quote, as well as all other estimates, proposals, and/or offers to sell, including samples, are subject to Li Gear's standard Terms and Conditions of Sale, and it's Standard Warranty, which can be found at our company website or by requesting a copy from the Company. All acceptances of quotes and/or purchase orders are deemed to have included, by reference to this quote, Li Gear's Standard Terms and Conditions.

(*Id.* ¶¶ 12–13 & Ex. B). Paragraph 13(e) of the Li Gear Terms and Conditions of Sale states:

> This agreement and any sale of products to Purchaser shall be deemed to have been made in and governed by the substantive laws of the State of Illinois, without regard to the choice of law provisions. Seller and Purchaser irrevocably consent to the exclusive jurisdiction of the Court of the State of Illinois (and the Federal Courts having jurisdiction in the State of Illinois) for purposes of any judicial proceedings that may be instituted in connection with any matter arising out of or relating to these terms or any sales pursuant hereto.

(*Id.* ¶ 16 & Ex. C). The quote was valid for 15 days. (*Id.* Ex. B). Kerr did not issue a purchase order for the gears offered in this sales quote. (*Id.* ¶ 18 & Ex. C).

The parties next met at a May 2014 trade show in Texas. (Li Dec. ¶ 21). While they dispute who initiated the request to submit a quote for gearboxes, several days later Li Gear sent Kerr a second sales quote for the requested items. (*Id.* ¶ 21 & Ex. D). The quote, which was valid for 15 days, again referenced Li Gear's standard Terms and Conditions. (*Id.* ¶ 21 & Ex. D). On May 23, Kerr issued a purchase order for the gearboxes quoted by Li Gear the day before. (*Id.* ¶ 21 & Ex. E). The gearboxes were subsequently delivered to Kerr's facilities in Oklahoma, and Kerr paid Li Gear's invoice. (*Id.* ¶¶ 23–24 & Ex. F).

On September 18, 2014, after oral communications between the parties, Kerr issued a second purchase order to Li Gear for 45 gearboxes at a total price of $630,000, which included the same Order Terms and Conditions as its May 23 purchase order. (Compl. Ex. A; Nowell Decl. ¶ 18). The parties disagree as to the substance of the surrounding oral communications. Li Gear asserts that Kerr inquired whether it could purchase a large quantity of the same gearboxes and at the same price it had purchased in May. (Li Decl. ¶ 26). Li Gear responded that its prior quote, which included Li Gear's standard Terms and Conditions, was still effective.

(*Id.*). Kerr contends, on the other hand, that the September 2014 purchase order was issued only after Li Gear "pleaded" with Kerr "to provide projections of the number of gearboxes that Kerr expected to need in the future." (Nowell Decl. ¶ 19). In any event, Kerr argues that the May 2014 quote expired by its own terms in June 2014 and does not apply to the September 2014 stand-alone transaction. (*Id.* ¶¶ 20–21 & Ex. 2; Compl. Ex. A).

The September purchase order gave rise to the lawsuit—Li Gear alleges that Kerr refused to take delivery of these gearboxes and has not paid for them. (Compl. ¶¶ 5–7). Kerr contends that it timely modified and later cancelled the purchase order before Li Gear delivered any of the gearboxes. (Answer ¶ 6).

## II. DISCUSSION

### A. Proper Motion for Challenging Personal Jurisdiction

Kerr asserts that the Court lack personal jurisdiction, styling its motion as a motion for summary judgment. (Dkt. 20). While Li Gear does not directly contest Kerr's approach, it references the Rule 12(b)(2) standard for dismissing a complaint for lack of personal jurisdiction. (Dkt. 30 at 3–4).[1]

Courts have generally held that "summary judgment is an inappropriate vehicle for raising a question concerning the court's . . . personal jurisdiction." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2713, at 235 & n.45 (3d ed. 1998) [hereinafter *Federal Practice and Procedure*]. In-

---

[1] Kerr does not address in its reply the fact that Li Gear is treating this as a motion brought under Rule 12(b)(2). (Dkt. 37).

stead, courts have concluded that a motion raising lack of personal jurisdiction should be considered a motion to dismiss under Rule 12(b)(2). *Fraserside IP, L.L.C. v. Youngtek Sols., Ltd.*, No. 11-3005, 2013 WL 139510, at *3 (N.D. Iowa Jan. 10, 2013) (collecting cases). "This makes sense, as a court that lacks personal or subject-matter jurisdiction does not have power to enter *any* kind of a judgment—summary or otherwise." *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1012 (D. Minn. 2008) (emphasis in original); *see Federal Practice and Procedure* § 2713, at 239 ("If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action."). As *Pope* explained:

> That is why a dismissal for lack of personal or subject-matter jurisdiction is always without prejudice; such a dismissal implies nothing about the merits of the dismissed claims because the court is not empowered to address the merits of the dispute. By contrast, a grant of summary judgment is a ruling on the merits, and thus has preclusive effect.

588 F. Supp. 2d at 1012; *see EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1048–49 (3d Cir. 1993) ("A grant of summary judgment and a dismissal for lack of personal jurisdiction, however, are wholly different forms of relief. The latter is a dismissal without prejudice, whereas the former is a ruling on the merits which if affirmed would have preclusive effect.") (citation omitted).

Further, unlike other motions to dismiss, a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is not converted to a motion for summary judgment if matters outside the pleading are considered. Fed. R. Civ. P. 12(d). And Kerr is not prejudiced by considering its motion as a motion to dismiss:

> While the facts adduced in a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction. This is the same standard as the one we apply on motions for summary judgment under Rule 56.

*Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 310 (8th Cir. 1992) (citation omitted). Thus, while Kerr has styled its motion as a motion for summary judgment, the Court will consider it as a motion to dismiss pursuant to Rule 12(b)(2).

**B. Motion to Dismiss Standard**

Rule 12(b)(2) provides for dismissal where a court lacks personal jurisdiction over a party. "The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). "In ruling on a Rule 12(b)(2) motion to dismiss, the Court may consider matters outside the pleadings."[2] *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 707 (N.D. Ill. 2014). "When the Court rules on a personal jurisdiction issue based on the submission of written materials, without an evidentiary hearing, the plaintiff's burden is only to make out a *prima facie* case of personal jurisdiction." *Id.*; *accord N. Grain Mktg.*, 743 F.3d at 491. In evaluating whether the burden has

---

[2] Both Kerr and Li Gear have provided affidavits in support of their respective positions. Kerr also objected to ¶¶ 41–57 in Li Gear's statement of additional facts because they exceeded the allowable number of additional facts. (Dkt. 38 at ¶¶ 41–57) (citing LR 56.1(b)(3)(C)). However, because the Court is considering Kerr's motion as a motion to dismiss, LR 56.1 is not applicable. Li Gear's Motion for Leave to File *Nunc Pro Tunc* a Statement of Additional Uncontested Facts Pursuant to Local Rule 56.1 Containing Fifty-Seven Statements [39] is denied as moot.

been met, the court resolves all factual disputes in the plaintiff's favor. *N. Grain Mktg.*, 743 F.3d at 491; *Montel Aetnastak*, 998 F. Supp. 2d at 707.

**C. Personal Jurisdiction**

Personal jurisdiction refers to the Court's "power to bring a person into its adjudicative process." *N. Grain Mktg.*, 743 F.3d at 491 (citation omitted). A federal court has *specific* personal jurisdiction when, "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities."[3] *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "Importantly, the defendant's conduct and contacts in the forum state must be substantial enough to make it foreseeable that it could be haled into court there." *Indigo Olive Software, Inc. v. Country Vintner, Inc.*, No. 14 C 8157, 2015 WL 3545262, at *2 (N.D. Ill. June 3, 2015) (citing *N. Grain Mktg.*, 743 F.3d at 492). The purposeful-availment requirement demands that a defendant's contacts in the forum state "demonstrate a real relationship with the state with respect to the transaction." *N. Grain Mktg.*, 743 F.3d at 493.

With respect to contract disputes, "contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781

---

[3] Li Gear does not contend that Kerr is subject to *general* jurisdiction. (Dkt. 30 at 10–15).

(7th Cir. 2003) (citing *Burger King,* 471 U.S. at 478). Instead, the court conducts a context-sensitive analysis of the contract, examining "prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." *Id.* (citing *Burger King*, 471 U.S. at 479). "So long as a commercial defendant's efforts are purposefully directed toward residents of the forum state, the fact that the defendant hasn't physically entered it does not defeat personal jurisdiction there." *N. Grain Mktg.*, 743 F.3d at 493 (citing *Burger King,* 471 U.S. at 476).

Li Gear has not met its burden to demonstrate that Kerr has sufficient minimum contacts with Illinois. While there is some evidence that Kerr initiated the contract at issue (Nowell Decl. ¶¶ 18, 20 & Ex. 3; Li Decl. ¶ 26; Compl. Ex. A), this is but one factor in determining whether personal jurisdiction exists, *Indigo Olive Software*, 2015 WL 3545262, at *3 ("The solicitation of the transaction, however, is only one of many factors a court must analyze to determine personal jurisdiction."); *see Burger King,* 471 U.S. at 479 (A court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts within the forum."). And while Kerr need not have a physical presence in the forum to establish personal jurisdiction, *Burger King*, 471 U.S. at 476 ("Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State.") (emphasis in original), the contract itself is not sufficient, *Purdue Research Found.*, 338 F.3d at 781 ("contracting with an out-

of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum"); *accord N. Grain Mktg.*, 743 F.3d at 489, 493–94 (where defendant set foot only once in Illinois, defendant's contract with Illinois plaintiff insufficient to establish jurisdiction); *cf. Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."); *Baker Dental Corp. v. Aurex Dental Inc.*, No. 13 CV 8181, 2014 WL 4414520, at *3 (N.D. Ill. Sept. 5, 2014) (where the contract at issue "did not envision continuing and wide-ranging contacts with Illinois," the "plaintiff cannot be the only link between the defendant and the forum."). Nor are phone conversations or email correspondence directed to Illinois sufficient to establish personal jurisdiction. *Indigo Olive Software*, 2015 WL 3545262, at *4 (where communication between defendant and plaintiff took place only via email and telephone, personal jurisdiction not established). Further, Li Gear's performance of its contractual duties in Illinois is not sufficient. *Baker Dental*, 2014 WL 4414520, at *3 (While "plaintiff's performance of its contractual duties tie this litigation to the forum state, [ ] that is not sufficient" to establish personal jurisdiction over the defendant which did not care whether goods were manufactured and shipped from Illinois or from somewhere else) (citing *Lakeside Bridge & Steel Co. v. Mountain State Const. Co.*, 597 F.2d 596, 601 (7th Cir. 1979)).

The purchase order at issue involves a discrete purchase and does not anticipate continuing obligations to the forum state. *N. Grain Mktg.*, 743 F.3d at 495 (finding

no personal jurisdiction and distinguishing the "Supreme Court cases involving contracts with continuing obligations to the forum state—e.g., the franchise contract in *Burger King*, 471 U.S. at 480 (describing the contract as a 'carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida') and the insurance contracts in *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 648 (1950) (describing the insurance certificates as being 'systematically and widely delivered' in the forum state and 'creat[ing] continuing obligations' between the insurer and the insurance holders)—[as] inapposite to the series of discrete contracts at issue here, each of which was performed once by delivery on a specified date and, so far as the record reveals, involved no further obligations on [defendant's] part"); *Baker Dental*, 2014 WL 4414520, at *3 (where defendant was not bound to continue purchasing from plaintiff and had no wide-ranging contact with Illinois, the court found no personal jurisdiction because the contracts "did not envision continuing and wide-ranging contacts with Illinois"). The state court cases relied upon by Plaintiff are readily distinguishable. In *Colony Press, Inc. v. Fleeman*, 17 Ill. App. 3d 14, 18 (1974), the court found sufficient contacts where *defendant* was responsible for picking up the goods in Illinois. Here, to the contrary, Li Gear was responsible for shipping the gearboxes to Oklahoma. (Dkt. 19, Exs 2–3; Li Decl. ¶¶ 37–38; Nowell Decl. ¶ 17). And in *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 344, 596 N.E.2d 212, 215 (1992), the court found personal jurisdiction when, unlike here where there is no ongoing commercial relationship, the "defendant actively initiated and negotiated an ongo-

ing commercial relationship with plaintiff," defendant travelled to Illinois to visit plaintiff, and there were numerous orders over "several years." In sum, Li Gear has not met its burden to demonstrate that Kerr's conduct and contacts in Illinois were substantial enough to subject it to personal jurisdiction of this Court.

**D. Forum Selection Clause**

In the alternative, Li Gear asserts that Kerr has waived any objections to personal jurisdiction in Illinois. "[P]ersonal jurisdiction is waivable and [ ] parties can, through forum selection clauses and the like, easily contract around" the federal rules. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1280 (7th Cir. 1997); *accord TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005). Thus, "a valid forum-selection clause, even standing alone, can confer personal jurisdiction." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) (citing *Burger King,* 471 U.S. at 472 n. 14); *see LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011) ("Waiving objections to personal jurisdiction via a valid forum selection provision renders any examination of the defendant's contacts with the forum state unnecessary.").

Here, Li Gear attests that in September 2014, Kerr inquired whether it could purchase a large quantity of the same gearboxes with some to be delivered as soon as possible. (Li Decl. ¶ 26). According to Li Gear, the parties "discussed price" as Jake Foster from Kerr wanted the price quoted in May and Li Gear responded that its "prior [May] quote was still good." (*Id.*). It is uncontested that Li Gear's May quote contained its standard Terms and Conditions which, in turn, included a forum

selection clause. (*Id.* ¶¶ 16, 21 & Ex. C at ¶ 13(e)) ("Seller and Purchaser irrevocably consent to the exclusive jurisdiction of the Court of the State of Illinois (and the Federal Courts having jurisdiction in the State of Illinois) for purposes of any judicial proceedings that may be instituted in connection with any matter arising out of or relating to these terms or any sales pursuant hereto."). According to Li Gear, Kerr responded with the purchase order at issue in the case. (*Id.* ¶ 26). Li Gear argues that since Kerr was essentially accepting a re-issue of its May quote, which included Li Gear's standard Terms and Conditions, the forum selection clause contained in the Standard Terms and Conditions vests this court with personal jurisdiction over Kerr. Thus, Li Gear has met its prima facie burden to demonstrate that Kerr waived its objection to personal jurisdiction in Illinois. Thereafter, Kerr issued its second purchase order for 45 gearboxes at a total price of $630,000. (Nowell Decl. ¶¶ 18, 20 & Ex. 3; Compl. Ex. A).

Kerr does not deny these events. In fact, Kerr acknowledges that the "agreement between Plaintiff and Kerr . . . consist[ed] of oral communications between the Parties and a written purchase order . . . ." (Nowell Decl. ¶ 18). Somewhat confusingly, Kerr asserts that it issued the September purchase order only after Li Gear "pleaded" with it "to provide projections of the number of gearboxes that Kerr expected to need in the future." (*Id.* ¶¶ 18–19 & Ex. 1). Resolving all factual disputes in the plaintiff's favor, the Court finds Li Gear has met its burden to demonstrate that its forum selection clause applies to the September shipment. Under Li Gear's version of events, it reissued the May 2014 quote in response to an inquiry from Kerr,

thereby eliminating its 15-day effective period. This constitutes an offer and Kerr's September purchase order an acceptance. Because Kerr's purchase order included nonmaterial terms and conditions not included in Li Gear's standard nonmaterial terms and conditions, which were referenced on the quote, a classic "battle of the forms" occurred. 810 ILCS § 5/2-207(1) ("A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."); *see also In re U.S. Office Prod. Co. Sec. Litig.*, 251 F. Supp. 2d 77, 95 (D.D.C. 2003) ("Material terms include price, payment terms, duration, and the identity of the parties involved."). Kerr's purchase order does not include any conditional language, and therefore, both Li Gear's standard Terms and Conditions and the purchase order's Terms and Conditions became part of the September contract. 810 ILCS § 5/2-207(2) (between merchants and barring certain exceptions, the additional, nonmaterial terms become part of the contract).

Kerr's motion to dismiss for lack of personal jurisdiction is denied.[4]

---

[4] This adverse decision does not foreclose Kerr from holding Li Gear "to its ultimate burden at trial of establishing contested jurisdictional facts by a preponderance of the evidence." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 399 (5th Cir. 2009); *see Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 915 (7th Cir. 1994) (The denial of a Rule 12(b)(2) motion to dismiss "is not an automatic bar to the renewal of the motion after evidence bearing on it has been obtained by pretrial discovery or presented at trial.").

## III. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment Based on Lack of Personal Jurisdiction [17], which the Court has construed as a motion to dismiss pursuant to Rule 12(b)(2), is **DENIED**. Plaintiff's Motion for Leave to File *Nunc Pro Tunc* a Statement of Additional Uncontested Facts Pursuant to Local Rule 56.1 Containing Fifty-Seven Statements [39] is **DENIED AS MOOT**.

E N T E R:

Dated: February 1, 2017

MARY M. ROWLAND
United States Magistrate Judge